DORE, Judge.
Walter Melveau, on March 17, 1947, was employed by L. O. Rarborn as a laborer to assist in the construction of a pipe line under contract to said Rarborn, between the cities of Lafayette and Caren-ero in Lafayette Parish, Louisiana. While engaged in the performance of his duties the said Malveau crossed from the eastern side of the Lafayette and Carenero paved highway for the purpose of obtaining certain items from a truck belonging to his employer, which was parked on the western side of said highway, and when the said Malveau attempted to recross the highway to resume his working position in a ditch east of the eastern shoulder of said highway, he was allegedly struck by an automobile driven by Leonard Resweber, Jr., resulting in injuries to his arm and hip which temporily disabled him from continuing his employment.
As a result of his injuries the Standard Accident Insurance Co., the compensation insurance carrier of L. O. Rarborn, assumed the payment of compensation, insurance and medical benefits due to the said Malveau as a result of his injuries.
The said Standard Accident Insurance Co. has filed this suit against the said Leonard Resweber, Jr., and Employers Liability Assurance Corp., Ltd., his liability insurer, on the ground that the accidental injuries suffered by Walter Malveau were due solely and entirely to the gross and culpable negligence of Leonard Resweber, Jr., which said negligence consisted, among other things, of the following, to-witr
(a) Driving at an excessive and reckless rate of speed;
(b) Failing to maintain a proper lookout;
*454 (c) Driving' his automobile in such a reckless manner that he was unable to bring it under control, or to bring it to a complete stop in order to avoid the collision, and that said negligence was the sole and proximate cause of the accident. The plaintiff claims that the owner of said vehicle and his insurer, the defendants herein, are therefore liable to' the plaintiff herein for the damages suffered by said plaintiff as a result of said accident; the damages being, of course, the workmen’s compensation and medical benefits paid and to be paid to the plaintiff plus a reasonable attorney’s fee to be fixed by the court and all costs.
The defense is to the effect that the accident referred to in plaintiff’s petition was due entirely to the gross, wanton, and careless disregard of his own safety by the said Walter Malveau, and that his own negligence and want of care and disregard of his own safety was the sole, only, direct and proximate cause of the accident and the resulting injuries. In the alternative, and only in the event that the defendant be found guilty of some negligence, contributory negligence on the part of Walter Malveau is pleaded as a bar to any recovery against the defendants.
After hearing the case the District Court, without assigning written reasons, rendered judgment in favor of the defendants, Leonard Resweber, Jr. and Employers Liability Assurance Corp., Ltd., and against the plaintiff, Standard Accident Insurance Company, rejecting the demand of the plaintiff and finally dismissing the suit of the plaintiff at its cost. The plaintiff has appealed.
It is admitted by stipulation that the plaintiff paid Malveau workmen’s compensation at the rate of $20.00 per week from March 17, 1947 to February 14, 1949, being 100 weeks of compensation totaling $2000.00. It is further stipulated that thereafter by virtue of a compromise judgment, defendant paid Malveau an additional sum of $3000.00. It is further stipulated that under the insurance policy of Employers Liability Assurance Corp., Ltd. the limits of liability for “Bodily Injury Liability” was $5000.00 for each person and $10,000.00 for each accident.
It is clearly shown by the evidence that the highway to the north of the point of the accident is perfectly straight for approximately two (2) miles and to the south of the accident is perfectly straight for approximately ½ to ¾ of a mile; that the paved part of the highway is approximately 18 feet in width, with dirt shoulders on each side about ten (10) feet in width. Near the scene of the accident a truck belonging to the contractors was parked on the east shoulder of the highway facing in a northern direction. Approximately twenty (20) employees of the contractor were engaged in laying a pipe line near the highway, which work was being performed in the field adjoining the highway and west of the drainage ditch situated along the highway.
The defendant, Leonard Resweber, Jr., the driver of the automobile involved in the accident, was a deputy sheriff of the Parish of St. Martin, Louisiana, and was returning from Baton Rouge after taking a prisoner to the penitentiary accompanied by Harold Resweber sitting on the front seat with him and another passenger on the rear seat. The testimony of the passenger on the rear seat is immaterial as he was not paying much attention to what was going on. Leonard Resweber, Jr. and his cousin, Harold Resweber, testified very much to the same effect; that as he approached the scene of the accident they ■saw a group of men working in the field to the west of the highway and that a truck drove onto the highway from the east shoulder proceeding north and in doing so the left front wheels of the truck crossed over the black line of the pavement; that at this time Leonard Resweber, Jr. was driving at a speed of about 40 to 50 miles per hour; that upon seeing the truck cross over to his side of the highway, he applied his brakes and slowed down to the speed of approximately 25 miles per hour and continued forward at this speed, after which time the truck returned to its proper side of the highway and Resweber proceeded to pass it. Leonard Resweber, Jr. states *455 that immediately upon passing the truck he saw Malveau for the first time and that Malveau was walking or running from the east, from the rear of the truck that had just passed him toward the west side of the highway; that he immediately turned his wheels to his right, in an attempt to miss Malveau, but was unable to do so and it appeared to him that Malveau jumped onto the side of his automobile. The result was that Malveau collided with the automobile at a point approximately at the windshield post at the left side of the car. Harold Resweber testified that he saw the colored man, Malveau, somewhere on the east side of the pavement half way between the shoulder and the black line at which time it looked like he was following the back of the truck headed toward the gang that was working on the right hand side, and that it looked like when he got to the car he jumped right on it when he had a couple of more steps to make; that there was practically no distance at all between the point where the Resweber car passed the truck and the point where the accident happened. It appears that Harold Res-weber, because of the position in which he was sitting, saw the negro a fraction of a second before Leonard Resweber, Jr. but not soon enough to warn Leonard Res-weber, Jr. in order to avoid the accident.
The testimony of Walter Malveau, the man who was injured, is to the effect that he crossed the highway from the west to the east for the purpose of getting his lunch box from “the truck which was parked on the east shoulder and which was about to leave for Carenero”. After he got his lunch box and coat, he started to cross the highway to go back to the west side and as he reached the approximate center of the highway someone called to him and he turned to face in a southerly direction, so that his back was to the approaching vehicle when the accident occurred. Mal-veau further states that he looked in both directions but did not see any approaching vehicles and that the truck pulled away after he had gotten his lunch box and coat, but he was unable to state the distance which the truck had moved at the time he was struck. He frankly admits in his testimony that he had not seen the oncoming car until someone hollored at him. He further admits that it was not the front of the automobile that struck him but the side thereof.
The only other material witness was Mr. Daly Comeaux, a co-worker of Malveau. He testified that the accident occurred at approximately 5 :15 P.M., at which time it was daylight; that two trucks were present at the scene, one of which was parked on the west side and the other on the east side. He further states in answer to the question,
Q. As a matter of fact, Mr. Comeaux, Malveau just walked into the side of that automobile. Is that right?
A. Yes, he didn’t seé no automobile. He just looked toward Lafayette. He never did look toward Carenero to see what was coming.
Comeaux states that as the automobile was approximately 20 feet from Malveau, he, Comeaux, saw the car and called, “HO” and the “accident happened just as quick as that”.
It readily can be seen by the testimony reviewed hereinabove that there is no showing of any negligence on the part of the defendant, Leonard Resweber, Jr. It is our opinion that the preponderance of the testimony shows that when the car passed the truck the accident occurred from five to fifteen feet to the rear of the truck.
It must be remembered that when the defendant saw the truck start to move onto the highway, he was traveling at approximately 50 miles per hour and estimated the distance at approximately 400 feet. Under the speed chart he would have traveled the 400 feet in less than six (6) seconds had he continued at the same rate of speed. We believe that this truck crossed the center line as testified by the defendant and his cousin and that the defendant slowed-his car down to approximately 25 miles an hour.
It is also shown by the evidence that the crew of workmen were across the highway in a northwesterly direction from where Malveau started across the highway; and the testimony of the defendant driver and of his guest is to the effect that Malveau *456 was “following the back of the truck headed toward the gang that was working on the right hand side.” Under questioning by the Court, Malveau answered, “He was moving following the back of the truck. It looked like to me to the center of the gang. The gang was more toward Caren-ero.” Clearly, under this testimony it shows that Malveau was crossing diagonally to the northwest and, therefore, following the truck.
While it is true that the defendant driver of the car did not see this Negro, it is our opinion that under the proof had he seen him he would have been unable to have avoided striking him, as we think from the evidence that Malveau was obscured from the view of the driver until the driver had passed the truck and Malveau was too close for him to stop or avoid the accident.
 The burden was upon the plaintiff to prove its case, and although under some of the testimony we might speculate as to the distance the truck had traveled and how far away it was from Malveau when the defendant passed it; but the proof, in our opinion, is not certain enough upon which to hold the defendant liable and obviously the trial judge accepted the testimony of the defendant driver and his guest and rejected any testimony which might lead to the conclusion that the view of the defendant driver was not so obscured that he did not have time to avoid the accident.
We cannot find any manifest error in the finding of the lower court and it is therefore affirmed.